RENDERED: MAY 31, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0823-MR


ST. MATTHEWS CARE AND REHAB
CENTER, LLC D/B/A ST.
MATTHEWS CARE CENTER AND
MEDICAL REHABILITATION
CENTERS, LLC D/B/A
EXCEPTIONAL LIVING CENTERS                                          APPELLANTS


                         APPEAL FROM JEFFERSON CIRCUIT COURT
v.                        HONORABLE BRIAN C. EDWARDS, JUDGE
                              ACTION NO. 22-CI-006338


TROY WOOD, AS ADMINISTRATOR
OF THE ESTATE OF EDITH K.
WOOD, DECEASED; CARLA
BREWER; JOHN VAN AALST;
KENTUCKIANA GERIATRIC AND
PALLIATIVE SERVICES, PLLC;
MUHAMMAD BABAR; AND VOHRA
POST ACUTE CARE PHYSICIANS
OF THE EAST, P.A., PSC                                               APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; A. JONES AND LAMBERT, JUDGES.

THOMPSON, CHIEF JUDGE: St. Matthews Care and Rehab Center, LLC d/b/a St. Matthews Care Center, and Medical Rehabilitation Centers, LLC d/b/a Exceptional Living Centers ("Appellants") appeal from an opinion and order of the Jefferson Circuit Court denying Appellant's motion to compel arbitration. Appellants argue that the circuit court erred in holding that Edith Wood ("Ms. Wood"), deceased, lacked the capacity to contract when she signed an arbitration agreement with Appellants. It also asserts that state and federal law supports the resolution of disputes through arbitration. After careful review, we find no error and affirm the order on appeal.

## FACTS AND PROCEDURAL HISTORY

Medical Rehabilitation Centers LLC d/b/a Exceptional Living Centers owned St. Matthews Care and Rehab Center d/b/a St. Matthews Care Center. St. Matthews Care Center ("St. Matthews") was a nursing facility.[1] On September 25, 2021, Ms. Wood was admitted to Appellants' nursing facility. In the year preceding her admission, Ms. Wood was repeatedly hospitalized for dementia, loss of consciousness, hallucinations, and metabolic encephalopathy. For the 12 days

---

[1] According to the United States Department of Justice website, St. Matthews Care Center agreed to permanently close in 2023.

immediately preceding Ms. Wood's admission to St. Matthews, she was hospitalized at Baptist Hospital East for dementia and loss of consciousness.

Three days after Ms. Wood's admission to St. Matthews, she signed an alternative dispute resolution agreement ("arbitration agreement"), in which she allegedly agreed to forego litigation with St. Matthews in favor of arbitration.[2] The agreement was revocable for 30 days. No family member or legal representative was present with Ms. Wood when she signed the agreement.

At the time of her admission, St. Matthews' staff conducted a perfunctory mental assessment referred to as a Brief Interview for Mental Status ("BIMS"). The assessment revealed some degree of cognitive decline. One response, for example, indicated that Ms. Wood did not know what year it was, or could not guess the year within a range of five years. Nevertheless, St. Matthews staff found that Ms. Wood's BIMS score was high enough to allow her to execute the agreement.

Ms. Wood died of septicemia on October 15, 2021, some 20 days after her admission to St. Matthews. Thereafter, her estate filed the instant action against Appellants alleging that their negligence proximately resulted in Ms. Wood's death.

---

[2] There is evidence in the record that Ms. Wood signed the arbitration agreement by pushing a button on an electronic device.

In response, Appellants moved to stay the estate's claims and compel arbitration. In support of the motion, Appellants relied on the arbitration agreement Ms. Wood executed upon admission. The estate, through Troy Wood, administrator, countered that the arbitration agreement was not enforceable because Ms. Wood lacked the capacity to execute a contract at the time of her admission. In support of the estate's argument, it pointed to Ms. Wood's medical history both immediately preceding her admission to St. Matthews, as well as her documented decline throughout 2021.

Appellants' motion proceeded in Jefferson Circuit Court, culminating in the court's order on June 7, 2023, denying Appellants' motion to send the matter to arbitration. In examining the issues presented, the court found that Ms. Wood was 76 years old at the time of admission to St. Matthews; she had previously been hospitalized for hallucinations and dementia in May 2021; she was hospitalized for loss of consciousness and confusion in September 2021; and, she was diagnosed with cognitive communication deficit and moderate cognitive impairment while at St Matthews. Based on the medical record, the court determined that,

> Ms. Wood, an individual with dementia and diagnosed cognitive impairment, likely could not understand and appreciate what she was doing when signing the Arbitration Agreement. There is evidence that Ms. Wood did not have the capacity to contract, and therefore there was no meeting of the minds between the parties when entering into this contract.

After the motion to stay the proceeding and compel arbitration was denied, this appeal followed.

## STANDARD OF REVIEW

> [C]ourts will not lightly set aside an executed contract. However, it is equally well settled that this Court will carefully scrutinize transactions between persons who from the very nature of the circumstances occupy unequal positions. To create a valid, enforceable contract, there must be a voluntary, complete assent by the parties having capacity to contract. The test of legal capacity to contract is the ability to understand and appreciate the consequences of the particular transaction. There must be a meeting of the minds to effect assent, and there can be no meeting of the minds where either party to the agreement is mentally incapable of understanding the consequence of his acts.

*Conners v. Eble*, 269 S.W.2d 716, 717-18 (Ky. 1954) (citations omitted).

Contract interpretation raises questions of law, which we review *de novo*. *North Fork. Collieries, LLC v. Hall*, 322 S.W.3d 98, 102 (Ky. 2010). The trial court's findings of fact are reviewed for clear error. *Id.*

## ARGUMENTS AND ANALYSIS

Appellants argue that the Jefferson Circuit Court erred in denying their motion to stay the proceedings and compel arbitration. They assert that an arbitration agreement is a contract; that as a matter of public policy, the law favors arbitration agreements; and, that there exists a presumption of one's capacity to freely contract, and a heavy burden to overcome that presumption. While

acknowledging that Ms. Wood suffered from medical issues in the months preceding her execution of the arbitration agreement, they argue that the record is insufficient to overcome the presumption that Ms. Wood had the capacity to understand and sign the contract. Appellants also point to the BIMS assessment conducted when Ms. Wood was admitted to St. Matthews, which they claim demonstrated her capacity to understand and assent to the agreement. They also argue that Ms. Wood's health issues and diagnoses after executing the agreement are not relevant to the issues before us. They request an opinion reversing the order on appeal and remanding the matter for arbitration pursuant to the agreement.

When considering Appellants' motion to compel arbitration, the Jefferson Circuit Court made findings of fact that Ms. Wood was diagnosed and hospitalized for dementia and hallucinations about four months prior to her signing the arbitration agreement. It also found that she was hospitalized for confusion and loss of consciousness in the days preceding her admission to St. Matthews, and that she was transferred directly from the hospital to St. Matthews on that day. The court went on to find that while at St. Matthews, Ms. Wood was diagnosed with cognitive communication deficit and moderate cognitive impairment. While this latter diagnosis was made after she executed the agreement, it occurred within days of her admission.

These findings are amply supported by the medical record, which is found at vol. II, pp. 174-202 of the circuit court record. Prior to her admission at St. Matthews, the medical record states that Ms. Wood was chronically ill-appearing; responded to verbal stimuli but fell back to sleep; had impaired cognition and memory; was "very obtunded" (reduced consciousness) and not answering any questions; and, had an "altered mental status." St. Matthews' BIMS results showed that Ms. Wood had "cognitive communication deficit," along with a myriad of physical maladies including heart disease, difficulty swallowing, and end-stage renal disease.

Having determined that the Jefferson Circuit Court's findings are supported by the record, the question then becomes whether based on those findings Ms. Wood had the legal capacity to contract evinced by the ability to understand and appreciate the consequences of the particular transaction. *Conners*, *supra*. Examining this question of law *de novo*, we conclude that the record reasonably supports the circuit court's conclusion that Ms. Wood lacked the capacity to understand and appreciate the consequences of executing an arbitration agreement. When presented with the arbitration agreement, Ms. Wood was not merely being asked a simple question such as "how do you feel" or "do you want something to drink?" Rather, Ms. Wood was being asked to consider her right to engage in litigation, to waive that right, and to participate in arbitration as a means

of dispute resolution. This was true despite St. Matthews' knowledge of her diminished mental capacity and its own assessment that Ms. Wood had a cognitive communication deficit. Further, Ms. Wood had no family member or legal representative present when she was asked to waive her legal rights.

## **CONCLUSION**

When considering the totality of the record and the law, we conclude that the Jefferson Circuit Court properly determined that Ms. Wood lacked the capacity to execute the arbitration agreement. As such, the arbitration agreement is not enforceable. Accordingly, we affirm the circuit court's order denying Appellants' motion to stay the proceedings and compel arbitration.


ALL CONCUR.


| BRIEFS FOR APPELLANTS: | BRIEF FOR APPELLEE TROY WOOD, AS ADMINISTRATOR OF THE ESTATE OF EDITH K. WOOD, DECEASED: |
|---|---|
| Paul A. Dzenitis | |
| Emily W. Newman | |
| Melissa M. Anderson | |
| Louisville, Kentucky | Paul A. Casi, II |
| | Paul A. Casi, III |
| | Louisville, Kentucky |